Good morning, Your Honors. Robert Maloney, appearing for Appellant Eddie Maloney, and may it please the Court. In 1974, the year at issue here, Eddie Maloney and his family maintained a traditional use area on what spanned the eventual demarcation line between Hopi partition line, Hopi partition lands, and Navajo partition lands. And the hearing officer's finding that Maloney was not a dual NPL-HPL resident is arbitrary and capricious and not based upon substantial evidence. He arrived at this decision through the misrepresentation of testimony and an over-reliance on the Bureau of Indian Affairs 1974-75 enumeration. Can I ask you a question about the enumeration document? Was there evidence in the record before the agency that the enumeration might not be an accurate indicator of Mr. Maloney's residence? Well, at the hearing, O'Neill's witness, Joseph Shelton, he acknowledged that many people had been found eligible for relocation benefits even though the enumeration did not show them as an HPL resident. Can you point me to where in the record you're referring to that testimony? It's in our excerpts of record. Let me see. The reason I'm asking this question, Mr. Maloney, is in Fuson, we framed the question about sort of inconsistencies with respect to the enumeration document as one that the IHO has to grapple with evidence that undermines the enumeration. So, for example, in that case, there was testimony that indicated that the enumeration document may be inconsistent or may not include individuals who were, in fact, living in a particular location, and that was inconsistent with the testimony of the applicant, and we said you need to sort of address both of those things. And here, and I'm interested in where you are pointing to evidence to the contrary, but I could not find any evidence before the agency that undermines the enumeration. Simply that there was a document that showed your client was not on the enumeration, and his grandparents, however, who had a similar pattern of going back and forth, were included on both the HPL and PL enumeration documents. This is correct. I mean, in this case, it is what the enumeration showed. What I'm speaking of is that excerpts of record 59. That's where Mr. Maloney's counsel at the administrative hearing asked Joseph Shelton, isn't it common for people who have not been enumerated to receive relocation benefits, and he said yes. And also, you know, you cited the Fuson case. I mean, that's very instructive because that case cited to the deposition testimony of someone who actually worked on the enumeration. And she described its purpose was not at that point in time to determine whether people were eligible for some future benefit. It was to get a general idea of the population in the joint use area for the purpose of, you know, the funds and resources it would take to effectuate the relocation program. And they only worked during the week and not on the weekends. So when they found Mr. Maloney at the Cal Springs home site that eventually became Navajo partition land, and remember at the time, these are all Navajo people. To them, it's all Navajo land. That would have been during the week because she said they did not work on the, the enumerators did not work on the weekend. Can I ask you a question about what the enumeration means after Fuson, whether or not there was evidence in this record to question the enumeration? Fuson dealt with a specific set of facts, and I'm trying to figure out now how we should tell the agency going forward to treat these enumerations. I think the, my sense is that it's probably wrong to treat them as creating a rebuttable presumption of residency or non-residency, but they're evidence of some kind. Certainly. How should the agency treat them? Well, I mean, it is evidence. I mean, you know, we don't argue that you should completely ignore it, but there have been so many instances, and in the record of this case, there are three decisions of the same hearing officer where he found people eligible for benefits even though they were not enumerated. So let me back up then. And so we have an enumeration that's of some evidentiary value. Yes. My sense is probably treated incorrectly as presumptively correct or prima facie evidence. And then in this case, what's the contrary evidence? Well, the contrary evidence in this case, as it is, I think, in virtually all of them, where the enumeration is overcome, it's through testimony. Right. It's the testimony of not of Mr. Maloney, but of the neighbor, if you will, who says he grew up next to us in Black Mesa and et cetera, et cetera. You're speaking of his witness, Darrell Woody? Yes. Also, could his grandparents, the fact that his grandparents are on the enumeration document in both locations actually be helpful to suggest that if they had the same pattern of moving from place to place, the fact that Mr. Maloney doesn't appear on both enumerations might be an error when his grandparents do, in fact, appear on both? Well, I'm not quite following what your question is, Your Honor. But, I mean, I would say that the enumerator in the Fuson case, you know, said that, you know, because the purpose of the enumeration at that point in time was to determine the population that resided there, that they would list everyone in a family, where they had dual home sites, they would list everyone in a family at one home site, but only the owner at the other home site. I think the question is whether because the testimony suggested that your client was assisting his family with the livestock and other things, that the fact that they resided at the Hopi-designated place, you know, is indirect evidence that he also resided there. I think that's the question, whether that's a permissible inference. Is that more or less the… Well, it was his family. Yes, I would agree. It was his family. His mother and his maternal grandparents lived at that home site. And, of course, his testimony was that, I mean, he was 12 miles away from the school where he resided during the school years. He worked as a bus driver. And so he would be up there every weekend to help with herding the sheep, hauling water, and other chores. Let me follow up on that because this ties in with the question I was trying to ask. You suggest in your briefs that we ought to remand to the agency with instructions to grant the application. And I'm trying to figure out why the evidence in this case is so compelling that we should do that. You admit that the enumeration is of some evidentiary value. You've got evidence on the other side. Why isn't this just a job, if we agree with your position on the merits, for the agency to sort out as a fact finder? Well, I mean, I will acknowledge that in the great majority of these cases where the court, either the district court or this court, does reverse the hearing officer, it is remanded to the agency for further proceedings. You know, there is a problem at the moment that because ONER essentially ceased to function at the end of the last fiscal year, and through a memorandum of understanding, all of its responsibilities have been transferred to the Department of Interior, the BIA. So I don't even know if they have the capacity, the BIA, to hold evidentiary hearings. Mr. Maloney's application was filed in 2009, is that correct? I believe that's correct, yes. Okay, so what is a typical period of time that you can expect this matter to be addressed if it were remanded? You know, it's hard to give an answer to that because at times, I mean, there are cases that have been remanded two years ago and total silence from the agency. And when they have had a supplemental hearing, it usually doesn't occur prior to that period of time. I mean, it will be around two years. It's been, I mean, that is a problem in these cases, that the agency is very, it doesn't, you know, it just kind of sits on these cases, and now they're before the BIA. I don't know what their capacity is. They have hearing officers, but could they hold a supplemental hearing? And we haven't been told. And I've had conversations with the U.S. Attorney's Office here, and they express a similar kind of befuddlement as to what's going to happen. So I have sort of a technical question that you may or may not be able to answer. Ordinarily, when the identity of the defendant, a government defendant, changes, like a new person is in office, we substitute them as defendant in the case. So is this one where we have to substitute the Department of the Interior? That's a good question, Your Honor. Your Honor, I've been told that there is an individual at the Department of the Interior, a contact person. But I name, you know, we're still naming O'Neill as a defendant because we've received no information about that. Okay. Would you like to reserve the balance of your time? Thank you. I will. Good morning, Your Honors, and may it please the Court. Maya Foster on behalf of the Office of Navajo and Hopi Indian Relocation. And just to address that question first, O'Neill does still exist. The Department of Interior, there's been a memorandum of understanding that Interior will handle the office's relocation benefits program. But at this time, the agency itself still exists. Okay, thank you. Can you answer my question about the timing in terms of whether cases are getting decided in the normal course, or are they on sort of hold, or what's happening with the typical remand that comes from this court in terms of the process? I'm not sure I have an answer for you on that, Your Honor. I know that the appeals processes are still happening regularly, but I'm not sure I have an answer for you on remand, and I could provide that information after this proceeding once I could confirm that with the U.S. Attorney's Office. No, that's okay. I really just want to make sure that the cases are being processed in the normal course, and maybe that normal course is two years, as I think your friend on the other side indicated, but there's not a hold on re-hearings or anything like that now that the Department of Interior is taking over. Correct, that's my understanding. And so, Your Honors, we ask here that you affirm the District Court's decision for two reasons. First, given the lack of evidence in this case in support of Mr. Maloney's residency claim, it was reasonable for the hearing officer to find that Mr. Maloney was not a resident of the HPL as of December 1974. And second, the District Court was right to conclude that the hearing officer's credibility determinations were supported by substantial evidence here. Can we address that first? Sure, Your Honor. Here's my concern, and maybe I don't have the correct dictionary descriptions in my mind. A credibility determination is basically, I don't believe you. I don't think you're telling the truth. I see no basis here for making an adverse credibility determination. There may be plenty of reasons for the hearing officer to say, well, it happened a long time ago, and maybe your memory isn't that good, but that's different than an adverse credibility determination. So I'm trying to figure out what basis there was for the hearing officer to say, essentially, I don't believe what you're saying, as opposed to, I hear what you're saying, but I don't give it much weight. In fact, the hearing officer found Mr. Maloney credible, but only made an adverse credibility determination against the witness, Mr. Woody, right? That's right. I'm talking about Mr. Woody. Okay. So let me address Mr. Woody, and then I'll address Mr. Maloney. I'm not sure there is anything. I was really just kind of clarifying Judge Hurwitz's question, which is we're talking about the witness that made an adverse credibility determination. Yes, Your Honor. I do believe that the district court, at least, has found that indefinite testimony, saying that you have visited somebody only on weekends, can be the basis of an adverse credibility determination. Which district court has found that, other than the one in this case? The District Court of Arizona. And they're a great group, but we're trying to figure out whether they're right or wrong. Yes. And so I'm trying to focus in on the difference between an adverse credibility determination. I don't think you're telling me the truth. I have reason to think you're not telling me the truth. And I just don't give your testimony much weight because of various other factors. And here, what adverse credibility means to me is you can ignore the testimony. And giving it less weight means that you might not put a lot of thumbs on the scale in one direction. And that makes a big difference to me about whether or not there is any evidence or whether or not the court, because I think the court mistreated the enumeration evidence. So I'm trying to see whether there's any evidence on the other side. And it seems to me there is evidence on the other side here. Sure, Your Honor. It's my understanding that the hearing officer for Woody's testimony was discrediting it as it applied to the residency determination. That's all it was about. But it was based on this idea that it was a long time ago. And we've held in other cases that simply finding that somebody is young or was young at the time that they're testifying as to their knowledge or there's been a significant amount of time that has passed is not a basis to find the testimony not credible. Sure, Your Honor. I think it's more than just it was a long time ago. It's that it wasn't providing much anyways. The testimony is fine. Well, sure it was. It was, you know, he took me home every weekend and he was my neighbor. It wasn't indefinite. I mean, that description just seems completely inapt to me. Understood, Your Honor. I actually think the credibility determination was specific to the testimony about seeing Mr. Maloney on the HPL, which was quite indefinite. The hearing officer did include in the findings of fact that information about Mr. Woody having been driven home by Mr. Maloney. I think the problem is that the range of inferences that comes from that testimony does not really help the credibility determination. Where did he go after he was dropped off? Did he truly stay on the HPL the entire weekend? Well, that may not be sufficient in the hearing officer's views to establish the fact of residence. I understand that. But I don't understand how the hearing officer can say, I don't believe you because you said you dropped him off there. You know, I mean, he was a long time ago. My family lived right by there. Those are all facts that don't seem to be. We can say there's no reason not to believe that he's testifying accurately. Whether the inferences to be drawn from those facts lead to residency is a different question. But I take it what the hearing officer here did is said, I don't believe you, so I'm not weighing your testimony at all. And let me tell you why it makes a difference to me. I think without the benefit of FUSON, the hearing officer and the district court erred in the treatment of the enumeration. And so now I'm trying to figure out whether that error was harmless because it has some evidentiary value or whether or not we should send it back so they can do the correct weighing. Sure, Your Honor. I do think that even if the court thinks that the IHO's determination is more similar to a weight of the evidence or more proper as a weight of the evidence argument for Mr. Woody in particular, it doesn't change the outcome. No, I'm not saying it's more similar to the weight of the evidence. I'm saying the hearing officer excluded Mr. Woody's testimony. He said, I find it not credible. I'm not going to use it. I'd like to, if I may. That's different than weighing. Yeah, I'd like to go to your other point, which has to do with whether the decision was arbitrary and capricious. And I was, to say the least, disturbed that your brief cited a legally erroneous principle. It cited the immigration law view of substantial evidence as compelling a contrary finding. That's at pages 21 and 30 of your brief. And I bring it up because this is not the first time I've seen in government briefs under the APA this inapplicable precedent and inapplicable standard. And I hope that you won't do it again and that you will have that feedback to your colleagues because it keeps coming up. But under the correct standard and crediting Mr. Woody's testimony, why is the decision supported? Why is it reasonable? Yes, Your Honor. So a few reasons. First, taking a step back, it is the plaintiff's burden in these cases to show that he resided on the HPL. And what we have here is truly a very light array of evidence in support of that. We have his testimony and Mr. Woody's testimony. Yes, Your Honor. And that is sufficient to support a finding in his favor, is it not? I disagree, Your Honor. And for several reasons. First, I think that the hearing officer pointed out several pieces of evidence that weigh in the other direction. First, the enumeration record, as was mentioned earlier. Second, the interview. In fact, Mr. Maloney's presence on the hearing. It's unclear whether he was interviewed. The documentation shows interviews of his family members but not of him. And I don't know whether the absence of him in the list shows that he wasn't, in fact, interviewed back in, what was it, 1974 or thereabouts. Yes, Your Honor. Let me clarify. I was talking specifically about his interview on the NPL on February 13th, 1975, which is undisputed by both the plaintiff and O'Neill. As to the enumeration record itself, plaintiff cites to a case, the Ray case that he relies on, that does say that, you know, and has been historically used in these cases, the enumeration record is prima facie evidence of an applicant's residency. And, again, the Ray case, which was cited, also says, you know, it's plaintiff's burden to disprove that enumeration. And now I want to briefly address the deposition testimony from Fusen, which we don't think that that should be considered in this case because it is extra record evidence. It wasn't in front of the hearing officer here. How about the argument, I think, that's being made, not that the deposition testimony from another case is evidence in this case to disprove the enumeration document, but that generally enumeration documents don't form the rebuttable presumption of residency because the purpose of an enumeration document was for a very different thing than identifying where people were residing for purposes of relocation benefits. We disagree with that. Our position is... Do you think that they still create, after Fusen, a rebuttable presumption of residency? Our position is that Fusen... I know that's your position. Tell me, how do you square that with Fusen? I'm not worrying about what Fusen is based on. Fusen says, as I read it, they're evidence, but they're not a rebuttable presumption of evidence of residency. Well, Fusen had very different circumstances in this case. I understand, but doesn't the language of Fusen tell us we can't give them rebuttable presumption weight anymore? I think that it couldn't as applied to that case. Or at least, it was the deposition testimony that was used. And the situation in that case was the applicant lived with someone who was listed on both sides of the partition line. And so, in that case, based on the deposition testimony, it wasn't enough... The enumeration wasn't enough to prove that the applicant couldn't have also lived on the other side. But that's precisely what happened here. I mean, the pattern in Navajo life, particularly for sheep-owning families, is to have a winter Hogan and a summer Hogan. And that's basically what the testimony here was, that he followed his family and the normal practices. So, I don't really see the distinction that you're trying to draw. A couple of things, Your Honor. First, Mr. Maloney was the head of household at this time. And I do think, in the deposition testimony, that that actually is something that supports the enumeration in this case. I can get into that more. It's extra record, so I feel sort of weird talking... Well, if it's extra record, it isn't before us. Sure. So, I just think that, in this case, it's important to take a step back here. And it's not just the enumeration that the hearing officer is relying on. It's, again, Mr. Maloney's unexplained presence on the NPL. During the time of year, he said that he lived on the HPL. It's an application statement that, on December 22, 1974, he lived in Cow Springs. And it's this lack of any other evidence, any statements by family members who he said he lived with, any other documentary evidence, or even... Were they still alive in 2009, the grandparents that he was visiting or living with in 1974? I'm not sure, Your Honor. But I also, again, as this is plaintiff's burden to prove, there could still be more detail, even in testimony. And the cases that were cited show what a more robust case looks like. In Fusen, there were two other witnesses in addition to the plaintiff. There was his ex-wife's testimony. There was... In Ray, there were 10 consistent witnesses. There were maps. There were photos. There were declarations from people who weren't serving as witnesses. This case is just not like the others. There is not enough here for... Or there was not enough here for the IHO to determine that Mr. Maloney was a resident of the HPL. I see I'm out of time. So for those reasons, we ask that you affirm. Thank you, Counsel. Thank you. I just wanted to take issue with counsel on the cases that were cited. The Ray case, for instance, and Fusen, I believe in both of those cases, it was primarily testimony that overcame the presumptive evidence, if we want to call it that, of the enumeration. Yes, Ray had 10 witnesses. It had more witnesses. I agree. There were like five applicants. I think your friend on the other side is arguing that in this case, the burden is on the plaintiff to show that relocation benefits, there's an entitlement to those benefits. And there are things in the record that the hearing officer had that weighed against the evidentiary burden that the plaintiff had, including the application itself. And on the face of the application, one of the things that she mentioned was that Maloney listed Cow Springs as his residence, which is on the wrong site for purposes of entitlement to benefits. So you're not arguing that there weren't some issues that needed to be weighed by the hearing officer, and, in fact, it can't just be that the testimony of your client alone is dispositive of the entitlement, if there are these other things, correct? Certainly. No, I concede that. But your Honor mentioned his application answer that he lived at Cow Springs, and this is in her brief. I mean, that is a four-subpart question. Well, there's an additional factor, too, which is that the date of the filing of the application, he would have lived at Cow Springs, even if he also resided at Black Mesa, because it was the time of year when he would have been at Cow Springs anyway. Yeah, I'm sorry. I guess I'm just saying I'm not sure how much weight that has that he answered that his residence was at Cow Springs. Well, that is correct, because that subpart of the question says, if you had a residence on the Navajo Nation, where was it? And that's where he said Cow Springs. Above that, I think it's subpart B or something, it says, did you live on the HPL, yes or no? He said yes. I mean, it's completely consistent, that question is, if you look at the whole thing, with his testimony. He answered it that way because he had two residences. Weighing all this is a job for the hearing officer. It seems to me your argument is that some pieces of evidence were either given undue weight, the enumeration, or improperly given no weight, Woody's testimony, for example. But you can't really say that the hearing officer didn't have sufficient evidence to reach a contrary conclusion, can you? You know, I think I would say that, Your Honor, because of the misrepresentation of testimony and just what we're just speaking of, if one looks at that application question, that's not a fair reading of it. He said in his application he lived in Cow Springs in December 22, 1974, but he also said he lived on the HPL. And, you know, it's referencing Navajo Nation and HPL, which didn't exist in 1974. It was all just Navajo traditional land. And so, but I mean, I just want to say quickly, my time is up, I see. But, you know, I think throughout the hearing officer's opinion he gives short shrift and misrepresents the testimony. Woody, for instance, I mean, you know, it's much more than he said he saw Mr. Maloney up at Black Mesa. He testified very clearly that every- You're out of time, so if you'd like to make a closing statement. I would just, if the panel doesn't have an additional question, I'll leave it there, and thank you. Thank you. The case just heard will be submitted.
judges: GRABER, HURWITZ, DESAI